Judge Mills
delivered the Opinion of the Court.
In 1784, John Dykes, of Louisa county, Virginia, made and published his last will and testament, which was recorded after his death, in 3 786. The provisions thereof, which haVé any bearing on this controversy, gre as follow:
“1 lend unto my wife duditb, two negroes, during her natural life, her choice, and one feather-bed and *530 furniture, two cows and calves, two sows and pigs, a good work-horse, a plentiful subsistence for the first year, (meat and bread and other necessaries to"wards house- keeping; and at her decease, to return to my children» Elizabeth, Judith, John, Henry and William Dykes, equally divided, share and share alike.
Bequest in Question.
Division of the slaves bequeathed.
“I lend to my daughter Elizabeth Barker, one negro girl named Jane, at what she is appraised at, to go in part of her legacy, during her natural life, and then to return to the heirs of her body forever,
“I lend unto my daughter Judith Hailey, one negro girl, named Hannah, at. what she is appraised at, to go in part of her legacy, during her natural life, then to return to the heirs of her body forever, her son James to come in equal share with the rest.
“I lend the rest of my estate to my children, E~ lizabeth. Judith, John, Henry and William Dykes, during their natural lives, to be equally divided amongst them, share and share alike, then to return to their children equally divided forever.
“My land to be sold at the death of my (wife,j and not before, without she thinks proper; my land on Fork creek, 540 acres, more or less; the land I had of Thomas Clarke.
“Lastly, I do constitute my beloved wife, Judith, executrix, together with my three sons, John, Henry and William Dykes, executors of this my last will and testament» hereby revoking all former wills by me made.”
All the executors qualified, and assumed the executorship.
Some time afterwards, the widow and legatees all united in a division of the estate. The widow took two slaves, -as he-r choice, and there being six more, each of the legatees got one, the daughters taking the ones specifically bequeathed to them. Some of these slaves were males and some females; and some of more value than others; and those legatees who got those of less value, had the difference made up to them out of the personal estate. JWra, who with her descendants, is now the subject of controversy, fell to William Dykes, one of the legatees and executors in this division, who brought *531 írer to Kentucky in 1791, and shortly thereafter, sold her to Samuel Boone, the appellant.
Detinue by the children of William Dykes, one of the legatees brought after his death against his alienee.
Evidence objected to by defendant!
Decision oí the circuit court and its reasons.
That the evidence of the existence of a writing witnessing the facts the witness proves, comps out on tile cioss examination of the other party, is no reason for dispensing with its production.
After the death of William Dykes, his children, now appellees, brought their action of detinue in the court below, for Nan and her children, in which the appellant pleaded non detinet, and a verdict and judgment was rendered in their favor for all the slaves, to revese which, the appellant has prosecuted this appeal, and relies hereon the vario,uscjues-' tions raised and decided against him in the- court below.
The appellees by the testimony of witnesses-introduced, proved the making of th.e division of tbs slaves and personal estate before related, and one of; these witnesses, son of the testator, and an executor, proved that this division was evidenced by an instrument of writing, signed by the parties, and left in the care of a Mr. Barnett, then, in the neighborhood, for safe keeping. , The counsel for the appellant objected to the admission of any proof of the division, till this writing was produced.
The court below overruled the objection, diciding, that as the existence of the writing came out on the cross examination of the appellant’s counsel, and was not relied on by the appellees, its production was not necessary.
We cannot concur with the court below in the reasons given for overruling this objection.. It was certainly immaterial whether the existence of the writing was disclosed on the examination of the plaintiff or defendants. Its disclosure at any period, brought its importance into view as the best evidence. It was not competent for the plaintiffs.so.to conduct*their examination as to prove the contents of the writing, and keep its existence out of sight,, and then, when its existence was disclosed by the cross-examination of their adversary, be excused,from producing it by their adroitness in first keeping it out of sight. And if the instrument ought to have been produced, and could not be substituted by parol evidence, the disclosure of its existence at ahy time, excluded the use of evidence of an inferió" ebaraeb'i'
Wrong reasons rlonot ef feet a.right decision,
it is not necessary to prove a devirionof slaves, and the assent of the executors in Virginia, before (ho separation, that the whiting which witness oil (be transaction, and was deposited therefor 6«fe keeping,, should be produced.
It may be all proved by parol, though the writing still exists,.
It is. like the swlbin^wUness without the stiite, 'vrifn hm"d M proved/*1'
Nor can we say with the court below, that the plaintiffs there did not rely upon it. To prove the allotment of the particular slaves in question, to their father, and the assent of The executors thereto, they certainly did rely upon it, or rather upon the division evidenced by it, which they had established by parol, when there was proof of a higher grade.
But while we dissent from the reasons which that court gave for this decision, and suppose them untenable, we cannot admit that the judgment ought to be disturbed on that account, if other reasons, not; assigned, appear sufficient to excuse the production of this evidence, and admit that of lessor grade.
The law did not, at that period, or since, require (lie owners of slaves to take, or keep, written evidence of title, and, therefore, such an instrument must have been intended as a ratification of the division between tin? parties, till acquiescence rendered its existence unnecessary^ audit was not to be matter, enrolled on any record. Since its deposit for safe-keeping, we hav§ become a stale, separate from,, and independant of, Virginia, and our process cannot reach the holder of that paper, which had been placed with him about forty years since.
As the paper was then out of the reach of process, and may be presumed to have performed its functions long since, we do not conceive that the plaintiffs below, were hound to produce it, while they had inferior evidence of the same facts, in their power. . . as a party under the decisions oí this court, is excused from producing a subscribing witness to a paper absent Ifom t-he state, before he uses other evidence.
(t w$s also, insisted, in that court, and now urged Mis, that by the will, the testator intended to provide,, first,, for h.is children,, and then for his grand children. The former were totake a life estate equally divided, and then a new hotchpotch, aftor the death of his children, was. to be made, and an equal division to follow.
That some of his children might have many children, and others few or none — that the slaves of aoysa being fern,ales, might increase rapidly, and *533 crthei*3 not at all, and that the true construction of the will, required a second equal division, after the death of all the testator’s children, and as some of them were living, this suit was premature, or, if it was not, the plaintiffs below we,re only tenants in common of the slaves, with the other grand children of the testator, and couid not support this action alone.
On a devise theUJto7m 06tatAo°Ej\ I.II. & w.du boequalfy divided a-share alike then to ro- ’ their qUaliy Bivided forever, held in con-"the^proví*ions in ike win-, that the ¡ach Slalí after the life’ estate is spent ^ respective)¡¡re-
The decision of this point must rest on the true meaning and construction of the will.
It must mean as the appellant contends, or the intention was, that his children should have one division, and then the slaves and other estate which each held, should be divided equally among the children of each respectively, without regard to the numbers held by the remaining children, and if so, none of the consequences contended for will follow.
The latter we conceive to be the intention of the testator in the will, which is drafted in not Very precise language. But there is nothing that points out necessarily, a second division, and the insertion of the word “respectively,” would have negatived the idea. Still, however, as the words used, might beliterally complied with, by a second division, we have been led to examine other parts of the will, to discover any thing which may aid Us in. discovering more fully, the intention of the testator. There we find that two slaves with some other articles, were bequeathed to his widow, and after her death, were to go to his children, without any limitation as to the estate the children were to take, and this is the aiily portion of the estate which his children could take as their own. He next bequeathes or lends to his two daughters, a slave each, adding the words, “to go in part of herlegacy,?’ meaning, no doubt, her' portion or shareof his estate, and then directs each to “return to the heirs of her body forever,” excluding the idea, that any of the rest of his grand children were to participate in these bequests. He after-wards disposes of the rest of his estate, to ail his children — that is, the part which had not been specifically devised, equally during their lives. Now, if the construction placed upon the will by the appellee* ty&s to prevail, then these two daughters would have. *534 their respectivo slaves divided equally- among their children, and these same children would, in addition thereto, come in for an equal share of those left to the sons, which is directly contrary to that equality among both children and grand children, which the testator meant to preserve, and an inequality would be produced by his own directions, instead of resulting from future contingencies.
Equality at the timo of making the will, not futuro and contingent inequality given ofloot in the construction of the devise.
inequality in iho division of (lie slaves among the tenants for life, not inconsistent with this will.
it is not error to refuse to give an instruction to the jury, predicated on the non-existonco ofa fact which the whole ovillen on, though parol, ..hewed, and to which ‘.here was no countervailing evidence.
We, therefore conceive, that the. testator intended to divide the fund on hand equally, and did not nicely scan the events of futurity, which might, and probably would, thereafter produce a great inequality; and that he intended one equal division, and then the portion allotted to each, was to go in equal shares to his or her children, it therefore follows, that this suit was not premature, nor are these plaintiffs joint tenants, or tenants in common with their cousins. They are entitled to all, or nothing at all.
Nor does the circumstance of some having the value of the slaves made up out of the personalty, corn travene the provisions of the will, or render the division made, void. For this personalty was to pass in the same manner, and it was not necessary that all should have a slave or slaves to comply with the will.
There were numerous instructions moved for on the part of the defendant, which went to affect the title of the plaintiffs, and which were correct in themselves, as legal propositions, but they were correctly overruled, because they had no applicatioa to the state of evidence, and were contrary to the whole tenor of it, therefore they will not be noticed in detail; but wc shall give one or two as spcr cimen.s. For instance, the court was moved to instruct the jury, that if no division had taken place between those entitled thereto, the plaintiffs had not a right to recover. Now, the whole evidence shewed a division among the children of the testator, acquiesced in for nearly forty years, and there was not a particle of evidence controverting it. It was, therefore, not. erroneous to refuse an instruction, which had nothing in the evidence on which it could !>e based.
Another example of the same sort as to proof ofan executor’s assent.
An executor’s assent to the tenant for life as to his estate is' sufficient for the remainder men, and after his death the legal estate passes to them.
The court was also asked to tell the jury, that if the plaintiffs had not the assent of the executors of John Dykes the elder, they could not recover. An executor possesses the legal title of that which belonged to the testator, and that estate draws with it all legal remedies, to recover or gain the possession. 1 ?,is legal estate, however, is only a trust, which he may easily part with to the cestui que trust, and his assent is necessary to the taking of this title by the cestui que trust, and by that assent he does neither more nor less than part with this legal title. But it is not necessary to prove an express assent. It may be inferal from his acts as certainly and conclusively, as from an express grant. Now the proof here is clear, that all the children of the testator add his widow, of whom the executors were part, united in making tisis division and agreement, that each should hold the share allotted to him or her. The assent to this division, and the making thereof, and acquiescence therein, was conclusive evidence of the assent of the executors, that each legatee should take and hold the title designed by the will, and there was no countervailing proof. The court below could not have been more or less blamabie, if it had refused to instruct the jury, that if John Dykes the elder hadnorvill the plaintiffs could not recover, than it was in refusing the instruction asked.
It may, however, have been intended by tins instruction, to require the court to say, that although the children of the testator had the assent of the executors, yet it was necessary for the plaintiffs, who took the remainder only, to have their assent to that estate also. In this point of view, it may deserve further notice. We are not willing to say that it is necessary for those in remainder to have any other assent than that given to the holder of the particular estate; one assent foliows the estate, and assents to the whole of it. The executor by that assent, parts with the legal estate, which follows the property, to the remaindjer men, and does not. return to the executor, unless the will should so direct-. Of course, on the death of William Dykes, the legal estate went to his children,
'aítíes had hypothecated their insitucfacte1* sily'provecfor disproved, & itís oyidcníly forPtheCfirstere •time; this court will be evidencoYn the bill of exception?,condegree toany prove it.
Where an ex-ratee with oi hors of the hfe estate in slaves' and a division is nia.de, and he holding'as3]©gateo in severniiy, soils frig himself'"1' oxeoutor, it cannot bo in♦worecutor1
It ¡g n()W insisted in this court, that there is no proof that William Dykes is dead, or if there is, that he died before the commencement of the present suit. It seems very evident from the whole record, has noticed every point, that this question is made here, for the first time, and that the fact was not contested in the court below, and the$presump*‘on *s v‘°lent, that the proof on that point was comP'ete there, but left defective in the record by the pensman who drafted the exception. The plaintiffs ¡n tlieir instruction asked, hypothecated it ex-pressíy upon the fact, that William Dykes was dead before this suit was brought. The defendant there, in some of his instructions asked, clearly assumes ^ie fact °f the death of William Dykes before this suit. Some of the witnesses.speak of him as decease(]} an{} others mention his death, although none of 1 ®iem speak of the precise time of his death. Under such circumstances, we gather enough from the record to convince us that the death of William Dykes was understood and taken on the trial of the cause, to have happened in due time. If it had not, the fatal effect of it to this suit was too apparent to have escaped the counsel of the appellant, who seems to have conducted the cause with great vigilance in the court below.
The defendant exhibited a regular bill of sale f¡-om William Dykes in his life time, conveying Nan, as a slave for life, for a valuable consideration, in which he is named in his individual right, without any allusion to his executorial character The. defendant below, asked the court to instruct the jury, that the evidence conduced to prove a sale j,y William Dykes as executor, and that-as cxecutor ')C *,a£* a !’’?;ht to sell, and having done so, the purchaser could hold the slaves, although the sale mjg])t not be necessary for the payment of debts.— This instruction was refused: and we think correct-!y. For although, as executor he might once have |¡a(] a right to sell, yet, by his assent to the legacy,, ^10 ^a^ elected to hold the slave in his own right, am! not as executor, and he had surrendered his title as executor, and there is no proof that lie acted ia this sale, in his executorial character, and the *537 bare fact of his being an executor, could afford no aid to the appellant, or furnish proof whereon Jo base thin instruction.
hoes the sale slave by te;¡act for life, ^ Jf gent remaiitdev?
dviseio W• f°rhic, aAdpnth^his (children fore-kc,’i P'v* to ¡ \ iihnnyiiavui ^¡cd. vr, the children a contingent remainder to vest oil TV’ i. denthfn bis children then living, excluding there-
Whore the vemaioduris 'f.^p^gsr ¡.ion timing a fie FarlICI1; i4\-7bore-1 r wainderman,
The last ground reiicu oh by the appellant, is the Jlapsc of time during vvitirh he has held these slaves since his purchase. claiming them as Isis absolute property — not the lapse of time since the death of Wiliiam Dykes, but after his sale to the appellant, until the death of said William. If is insisted, that the remainder in these .slaves bequeathed to the ehildred of WiHiam Dykes, was a contingent one, and that an alienation by the holder of the particular estate of ail title, and an adverse holding under‘it,, tended to destroy the particular estate, and that whatever lessened or defeated a particular estate, tends to defeat the contingent remainder;
We, readily concede, that the remainder in .case is contingent. Remainders are contingent! when 1 bn estate is limited to take effect,, either to dubious and uncertain person, or upon a dubious and uncertain event. Tills belongs to the former class. The bequest is to a general description of persons, and not byname. Of course that body or number of persons, to wit, the children of WiHiam Dykes was liable to diminution or increase before the determination of the, particular estate. If any were born after making the will, they were entitled', to claim. If any died afterwards, their fives could not. Of course the number existing. any existed, on the termination of the particular osfate, could alone take under the bequest, and an that number was uncertain, as to part, and as to its entire, existence, at the, death of William Dykes, the younger, the remainder would not vest til! his death. See Ewing’s heirs vs. IIundieyJs executors, 4. Litt.' Hep. 346.
If the remainder had been vested, there could have been no doubt according to tiie former dccisions of this court, that no time elapsed during the continuance, of the life estate, could be counted as forming a bar to the. recovery. But ia citsccf a contingent remainder, we have found no precedent is this court on that point.
Contingent vcn.aiudcr in land is defeat cd by the bar of the claim of the tenant of the pavti■IV,ilar estate, by the itatuie uf limitation? — It ir- oiherwisp as tc chattel?.
Tso length of possession advor?oto the tenant of the particular estate if. slaves during his es-ta! e will bar a contingent re Toaiuder.
‘Judgment for cost? and damages.
October 3 C.
We cb’nrede, as held by this court, in the case of May’s heirs vs. Hite, 5. Lilt. Rep. 307, that whatsoever tends to defeat, a particular eslate, will defeat a contingent remainder: of course a bar by the-statute ofliinitalionfi against the former, would be decisive against the Jailer.
But this doctrine applies to real estate, and is applied to it by this court in the case cited; and the reason for it is, that real estate required livery of seizin and there must always be a tenant to the' precipa.
But these reasons do not apply to chattels, and wd can /hid no case in which a contingent estate, in chattels. has been defeated by the destruction of the partieularciitate. or tv here the alienation «filie, holder of the particular estate could prejudice those in rcrnainder, all hough thammiinder was contingent.— It may be a caseof compassion for innocent purchasers, that a contingency should happen, which helped an adverse claimant to an exemption from (he. offerl of the act of limitations, but it residís from what a former, holder of the estate has done by limiting if, and while the will-making power enables testators thus to limit, what they devise, and our statute ofiimitalions remains as it is, this court can afford no remedy for the, hardship. The statute, never attaches till the cause of action arises, and here no cause of action to the appellees did, or could accrue, till the happening of the contingency. See Bacon Abr. Guil. 2d 474, Of course it follows, that no time can be computed to form the bar, except. what elapsed after the deatli of William By Ices, and no Mich time is made out in this case.
The judgment of the. court below, must, therefore, be affirmed wifh costs and damages.